IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**REUBAN M.,**[1]

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,

    Defendant.

**Civ. No. 6:20-cv-01521-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Reuban M. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by rejecting Plaintiff's subjective symptom testimony. Pl.'s Br., ECF No. 13. Because there is substantial evidence in the record to support the ALJ's findings, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

    Plaintiff applied for SSI on February 27, 2018, alleging disability since January 1, 2014. Tr. 59. The claim was denied initially and upon reconsideration. Tr. 68, 80. Plaintiff requested a

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

hearing before an ALJ and appeared before the Honorable Mark Triplett on November 6, 2019. Tr. 29–58. ALJ Triplett denied Plaintiff's claim in a written decision dated December 3, 2019. Tr. 17–24.  Plaintiff sought review from the Appeals Council and was denied on July 7, 2020, rendering the ALJ's decision final. Tr. 1. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 32 years old at the time of his alleged disability onset. *See* tr. 60. He has a ninth-grade education and no relevant past work experience. Tr. 39, 48, 250. Plaintiff alleges disability due to Crohn's disease and dysgraphia. Tr. 59–60, 165.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*

*Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony. Pl.'s Br. 5–12. An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*

*v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Plaintiff suffers from Crohn's disease; his primary symptoms include fatigue, loose bowels, and occasional blood in stool. Tr. 576. Plaintiff receives regular infusions of Remicade to treat it. Tr. 40. Each infusion lasts five to six hours. Tr. 42. Because Plaintiff has had allergic reactions to the medication, he must take Benadryl before each infusion. Tr. 41–42. Plaintiff testified that he has "low energy" the day after each infusion, as a side effect of the medication and the Benadryl. Tr. 43. Until June 2019, Plaintiff was receiving infusions every eight weeks. *See* tr. 257, 261, 265, 270, 273, 367, 376. The infusions worked well at ameliorating Plaintiff's symptoms, but the symptoms began to return in the two weeks leading up to the next infusion. Tr. 341, 576. Because of this, Plaintiff's doctor changed the infusion schedule to every six

weeks. Tr. 576; *see* tr. 583, 594, 606. Plaintiff testified that he still feels increased fatigue toward the end of the infusion cycle. Tr. 44–45. Plaintiff argues that his "course and response to treatment prevents him from sustaining full-time competitive work." Pl.'s Br. 12.

      Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. The ALJ found Plaintiff's subjective symptom reports were inconsistent with his activities of daily living and not fully supported by the medical evidence of record. Tr. 21–22.

      The ALJ first found that Plaintiff's activities of daily living do not support the degree of limitation and fatigue that Plaintiff alleges. Tr. 21–22. The ALJ noted that Plaintiff was able to hike the panther ridge trail at Hanging Rock, describing it as "pretty steep." Tr. 21; *see* tr. 408. The ALJ also cited Plaintiff's ability to play video games when fatigued from infusions, as well as the fact that Plaintiff "go[es] shopping, prepare[s] meals and perform[s] household chores." Tr. 22. Because Plaintiff's energy levels vary throughout the infusion cycle, the Court is less persuaded. However, the ALJ gave additional reasons for partially discounting Plaintiff's subjective symptom testimony.

      Plaintiff's self-reports at medical appointments do not support the degree of impairment alleged at the hearing. In January 2017, when Plaintiff was receiving infusions every eight weeks, Dr. Donald Yang noted that Plaintiff's "symptoms remain quiescent for 6-7 weeks with only mild change in bowel habits and malaise nearing the end of 8 weeks." Tr. 314. At this same visit, Plaintiff extended his infusion schedule an additional week because he had travel plans at

5 – OPINION AND ORDER

the original scheduled infusion date; he was "optimistic that he [would] be able to tolerate the additional week." Tr. 314. In July 2018, Dr. Yang again noted that Plaintiff's symptoms recur at the end of the eight weeks. Tr. 341. He considered increasing the dosage or frequency of the Remicade. Tr. 342. In June 2019, Plaintiff reported abdominal pain for the two to three weeks leading up to the infusion, as well as increased fatigue, loose stools, and occasional blood. Tr. 576. Plaintiff told Dr. Yang that he could have a regular job if his energy were consistent throughout the eight weeks, but at this time, his energy was only consistent for the first six weeks. Tr. 576. After this appointment, Plaintiff was switched to a six-week infusion schedule. *See* tr. 583, 594, 606. Plaintiff repeatedly reported to his doctor that infusions kept his symptoms at bay for six weeks. It stands to reason that with infusions every six weeks, Plaintiff would experience only minimal recurrence of symptoms.

This is consistent with Plaintiff's own testimony at the hearing. He testified that at the last three to four days of each infusion cycle, he "start[s] feeling like . . . why am I a little bit extra tired?" Tr. 44. When Plaintiff's counsel asked about increased bowel symptoms at the end of the cycle, Plaintiff testified, "It's mostly the fatigue that I've noticed towards the end of the time." Tr. 48.

In crafting the RFC, the ALJ took Plaintiff's subjective symptom testimony into account. The ALJ found that "the reduced range of light work would be sufficient to account for side effects of the medication." Tr. 22. The ALJ also incorporated ready access to bathroom facilities to account for Plaintiff's bowel symptoms. Tr. 22. To the extent the ALJ discounted Plaintiff's subjective symptom testimony regarding the increased fatigue at the end of each six-week infusion cycle, he gave clear and convincing reasons for doing so.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 25th day of March, 2022.

                                                       s/ Michael J. McShane
                                                     Michael J. McShane
                                                     United States District Judge